Andrew Grimm (*pro hac vice* forthcoming)
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org

Stephen J. Gordon (BBO No. 203620)
STEPHEN GORDON & ASSOCIATES
2 Foster Street, 2nd Floor
Worcester, Massachusetts 01608
(508) 755-1050
stevecolvi@aol.com

*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MASSACHUSETTS

## CENTRAL DIVISION (WORCESTER)

| | |
|---|---|
| CYNTHIA "CINDY" FOSS, HUNTER FOSS DESIGN & INTEREST, <br> *Plaintiffs*, <br><br> vs. <br><br> EASTERN STATES EXPOSITION, <br> *Defendant*. | Case No.: <br><br> **Complaint** <br><br> **[Jury Trial Demanded]** |

Plaintiffs Cynthia "Cindy" Foss and Hunter Foss Design & Interest (collectively "Ms. Foss") for their Complaint against Defendant Eastern States Exposition ("Eastern"), hereby allege the following:

## I. NATURE OF THE CASE

1.  In violation of Ms. Foss' exclusive rights under the Copyright Act, Eastern has made marketing videos that prominently featured Ms. Foss' copyrighted works of visual art. Eastern's videos gave Ms. Foss no credit.  And, Eastern displayed these videos online to the public without her consent.  Because Ms. Foss owns (and during all relevant times owned) the copyrights in the works that Eastern depicted, Eastern infringed her copyrights therein.

2. At core, this is a relatively straightforward copyright-infringement case. Ms. Foss authored copyrighted works, *i.e.*, photo-realistic artistic compilations and art-installation pieces. Yet when her works were later featured prominently at a fairground exhibition, the fairground operator, Eastern, decided to reproduce Ms. Foss' copyrighted work by filming it extensively. Then, Eastern publicly displayed these unlawful marketing videos online, exploiting Ms. Foss' work to generate buzz and to bring customers to Eastern's "The Big E" fairgrounds. Eastern did so without Ms. Foss' authorization and without providing any payment for its extensive use of her work in an advertising campaign central to its revenue-generating efforts.

3. Adding insult to injury, Eastern never gave Ms. Foss one iota of credit for artworks that, in Eastern's own telling, created an extraordinary sense of peace in an otherwise ordinary setting. Worse, Eastern and its agents and its lawyers have repeatedly rebuffed Ms. Foss' entreaties to give her credit for this work, by largely ignoring her. Even when Ms. Foss' counsel has formally requested that an attribution be made and, on that basis, asserted Ms. Foss' right to claim authorship of her works, Eastern's counsel have simply ignored these requests.

4. Finally, when Ms. Foss' appellate counsel inquired with Eastern's counsel about receiving their assurances that the infringing uses have stopped, Eastern's counsel simply refused to engage that question. Instead, Eastern sent aggressively worded, defense-attorney attacks on a reasonable request to ascertain whether the copyright infringement has stopped. Eastern refused to provide even this assurance, leaving Ms. Foss no other option than to pursue through legal action and court-supervised discovery what could have been resolved through a simple and professional exchange of counsel—had Eastern's counsel wished to engage in good faith.

5. Notably, this Court is not unaware that Ms. Foss and Eastern have their legal differences. Ms. Foss has filed suits against Eastern. See generally <u>Foss v. Spencer Brewery</u>, No. 4:18-CV-40011-TSH (D. Mass. Jan. 22, 2018); <u>Foss v. Spencer Brewery</u>, No. 4:18-CV-40122-TSH (D. Mass No. July 19, 2018); <u>Foss v. Spencer Brewery</u>, No. 4:18-CV-40125-TSH (D. Mass. July 23, 2018).

6. Yet none of these prior cases bar this present action, for a few separate and independent reasons:

    a. First, none of the rationales that Eastern set forth to receive dismissals in prior lawsuits were on the merits. Instead, and unlike its earlier co-defendants Spencer Brewery and St. Joseph's Abbey that quickly resolved claims against them on the merits, Eastern repeatedly used procedural motions to avoid the merits. In turn, it is black-letter law that only a resolution on the merits has preclusive effect against later actions.

    b. Second, this present Complaint describes copyrighted works herein that, according to Eastern, were not implicated in the prior actions. Thus, dismissal in those cases could not bar this lawsuit, *i.e.*, a suit that invokes works that Eastern represented were not invoked in the prior actions.

    c. Third, this present action also pertains to acts postdating those lawsuits.

        i. On information and belief, Eastern has continued to make infringing uses of Ms. Foss' works. In the least, Eastern has refused to deny ongoing infringement. When asked for assurances that it is making no further use of the works, Eastern went radio silent.

        ii. Also, Ms. Foss has recently requested, through counsel, that she receive credit for her status as author of works of visual art, formally asserting her rights to claim authorship. Eastern has refused to cooperate with her affirmative assertion of her rights of attribution, by ignoring them. Thus, Eastern has recently infringed Ms. Foss' attribution rights.

7. The prior lawsuits do not bar this action. Prior decisions had didn't have preclusive effect. Even if they did, portions of these claims postdate those lawsuits.

## II. PARTIES

8. **Plaintiffs.** Ms. Foss is a natural person domiciled in Worcester, Massachusetts. She is the sole proprietor of her graphic-arts firm, Hunter Foss Design & Interest, which is also domiciled in Worcester, Massachusetts.

9.  **Defendant.**  Eastern is a corporation with a principal place of business in West Springfield, Massachusetts.  Eastern is incorporated under the laws of the Commonwealth of Massachusetts.

### III. JURISDICTION & VENUE

10.  **Federal Question Jurisdiction.**  This action arises under federal copyright laws, 17 U.S.C. §§ 101, *et seq.*, specifically 17 U.S.C. §§ 106, 106A, 501.  Therefore, this Court has exclusive subject matter jurisdiction over Ms. Foss' claims.  See 28 U.S.C. §§ 1331, 1338(a).

11.  **Personal Jurisdiction.**  Eastern is subject to the general jurisdiction of the Hampden County Superior Court.  See Mass. Gen. Laws ch. 223A, § 2.  Therefore, under Federal Rule of Civil Procedure 4(k)(1)(A), this Court will have personal jurisdiction over Eastern upon proper service of summons upon it.

12.  **Venue.**  Eastern is a resident of the Commonwealth of Massachusetts.  See 28 U.S.C. § 1391(c)(2).  In addition, a substantial part of the events giving rise to the claims asserted occurred in the District of Massachusetts.  Therefore, this Court is a proper venue.  See 28 U.S.C. § 1391(b)(1)-(2).

13.  **Intra-district Assignment.**  All Parties reside in the District of Massachusetts.  Both Plaintiffs reside in Worcester County.  Therefore, this action is appropriately filed in the Central Division.  See L.R. 40.1(d)(1)(B).

### IV. STATEMENT OF FACTS

**A.  This Court has adjudicated prior disputes between the Parties.**

14.  Notably, this Court is not unaware that there have been significant legal differences between Ms. Foss and Eastern regarding her copyrights.  Ms. Foss has filed suit against Eastern on three prior occasions.

15. In her first suit, <u>Foss v. Spencer Brewery</u>, No. 4:18-CV-40011-TSH (D. Mass. Jan. 22, 2018) (the "40011 action"), Ms. Foss sued Eastern as well as other defendants.

16. The 40011 action does not have preclusive effect against the claims asserted herein against Eastern.

    a. In the 40011 action, the other defendants, namely Spencer Brewery and St. Joseph's Abbey, decided to seek adjudication on the merits. They sought judgment on the pleadings for a license defense. 40011 Dkt. 62. This Court granted their motion. 40011 Dkt. 63. Thus, Ms. Foss' prior claims against Spencer Brewery and St. Joseph's Abbey were resolved with preclusive effect.

    b. Eastern, however, chose a different path. Eastern decided to seek dismissal based on a procedural argument. 40011 Dkt. 28. Specifically, Eastern argued that Ms. Foss had failed to comply with pre-suit, claims-processing requirements because she had not yet registered her copyrighted work and that the 40011 complaint did not sufficiently invoke or identify a registered copyrighted work. 40011 Dkt. 29. This Court granted Eastern's motion. 40011 Dkt. 30.

    c. This Court's dismissal of Eastern did *not* have preclusive effect. <u>See</u> <u>Cortés-Ramos v. Martin-Morales</u>, 956 F.3d 36, 43 (1st Cir. 2020) ("Generally, when a plaintiff's claim is dismissed for failing to satisfy a pre-suit requirement, the dismissal should be 'without prejudice' when the plaintiff may able to satisfy the requirement in the future.").

17. In her second suit, <u>Foss v. Spencer Brewery</u>, No. 4:18-CV-40122-TSH (D. Mass. July 19, 2018) (the "40122 action"), Ms. Foss sued Eastern as well as other defendants again.

18. The 40122 action does not have preclusive effect against the claims asserted herein against Eastern.

    a. Ms. Foss, acting *pro se*, had understood that Massachusetts state court was the appropriate forum for her state-law claims and, accordingly, she filed a complaint there. 40122 Dkt. 7 at 1-7 (state-court complaint). Eastern removed the state-court action to this Court on the basis that Ms. Foss had asserted federal copyright claims. 40122 Dkt. 1.

b.  At a hearing, the parties to the 40122 action agreed that the 40122 action was duplicative and jointly stipulated to its dismissal.  40122 Dkt. 20 at 7:9-20.  Accordingly, this Court granted their joint request for dismissal.  40122 Dkt. 20 at 7:21-23 ("THE COURT: Okay.  So Docket No. 40122 is dismissed at the request of the plaintiff with the consent of the defendants."); see also 40122 Dkt. 19 (order of dismissal).

c.  This joint-stipulated dismissal of duplicative litigation did *not* have preclusive effect.  See Xu v. City of New York, 612 F. App'x 22, 26 (2d Cir. 2015) ("Discretionary dismissal of duplicative litigation […] is not a judgment on the merits […] and therefore lacks claim preclusive effect[.]"); Curtis v. Citibank, N.A., 226 F.3d 133, 138 (2d Cir. 2000) (A "court faced with a duplicative suit will commonly stay the second suit, dismiss it *without* prejudice, enjoin the parties from proceeding with it, or consolidate the two actions." (emphasis added)).

19.  In her third suit, Foss v. Spencer Brewery, No. 4:18-CV-40125-TSH (D. Mass. July 19, 2018) (the "40125 action"), Ms. Foss sued Eastern as well as other defendants again.

20.  The 40125 action does not have preclusive effect against the claims asserted herein against Eastern.

a.  Like the 40122 action, the 40125 action was initially filed in Massachusetts state court.  40125 Dkt. 4 at 5-12.  The 40125 action was removed to this Court because it stated copyright-infringement claims.  40125 Dkt. 1 at 1-3.

b.  Eastern sought dismissal for familiar reasons, *i.e.*, for what wasn't in the 40125 complaint.  40125 Dkt. 8.  Specifically, Eastern sought dismissal on the procedural grounds that Ms. Foss had failed to allege copyright registration.  40125 Dkt. 9 at 9-12.

c.  This Court granted Eastern's motion but permitted Ms. Foss to amend.  40125 Dkt. 20.  Ms. Foss did.  40125 Dkt. 23.  Then, Eastern again sought dismissal on procedural grounds that do not go the merits of the claim.  40125 Dkt. 26.  Eastern took issue solely with what it argued was Ms. Foss' failure to sufficiently identify a registered copyrighted work.  40125 Dkt. 27.

Complaint

d.  Once again, dismissal on these procedural grounds did not have preclusive effect going to the merits of the claim.  See Cortés-Ramos v. Martin-Morales, 956 F.3d 36, 43 (1st Cir. 2020) ("Generally, when a plaintiff's claim is dismissed for failing to satisfy a pre-suit requirement, the dismissal should be 'without prejudice' when the plaintiff may able to satisfy the requirement in the future.").

21.  Moreover, even if the 40011 action, the 40122 action, and/or the 40125 action had preclusive effect, those actions would not bar this action.

a.  Eastern repeatedly represented to this Court that the prior actions did *not* involve an identifiable copyrighted work.  40011 Dkt. 29 at 6-7; 40122 Dkt. 11 at 11-12; 40125 Dkt. 27 at 6-11.  Insofar as this action *does* identify in specific detail an infringed copyrighted work, those actions cannot bar this action.  What is more, Eastern represented in open court that its arguments asking for dismissal in those actions were *not* on the merits.

b.  Also, this action asserts, on information and belief, infringement activities by Eastern that postdate these earlier actions.  On information and belief, Eastern has infringed Ms. Foss' copyrights by reproducing and publicly displaying Ms. Foss' copyrighted works since dismissal of the prior actions.  Notably, when queried on just this issue, Eastern's counsel refused to provide any assurances that infringement has stopped. Eastern's counsel went radio silent.

c.  Finally, Ms. Foss has, through counsel, asserted her right to claim authorship of her works of visual art by insisting that Eastern give her attribution as author of those works.  Ms. Foss made these requests in October 2020 and Eastern has refused to honor this right.  Thus, Eastern's attribution-right violations are of recent vintage and cannot be precluded by actions that predate the accrual of the attribution-rights claims.

22.  Thus, the earlier actions—the 40011 action, the 40122 action, and the 40125 action—don't have preclusive effect.  And, even if they did, those actions do not bar this action which identifies a specific copyrighted work, alleges infringement since that time, and asserts an attribution-right claim that recently accrued.

**B. Ms. Foss is an accomplished graphic artist who designed and created a large photo-realistic compilation print for exhibition purposes.**

23. Ms. Foss is a graphic artist, designer, photographer, photo-illustrator, and artist with over twenty years of experience in her field. She has particular expertise in the artistic arrangement and editing of photography into photo-compilations to produce a strong sense of space and mood.

24. Ms. Foss received her Bachelor of Fine Arts from the University of Massachusetts, at Amherst, in 1997. In that program, she cultivated her skills in drawing, painting, design, and computer animation. Since completing her education, she has established a successful graphic-design and graphic-arts practice in Worcester, Massachusetts serving a wide variety of clients.

25. Ms. Foss' practice abides by the graphic-arts standards set by the American Institute for Graphic Arts, the AIGA, a professional association for design and graphic arts. See https://www.aiga.org/ (AIGA website). Some examples of Ms. Foss' design artwork and services are exhibited on her website, http://www.hunterfoss.com/.

26. In 2016, Ms. Foss was contacted by Father Isaac Keeley about creating artwork for an exhibition space. Father Isaac was the Director at Spencer Brewery, a craft brewery associated with a Trappist monastery, St. Joseph's Abbey. On behalf of the Brewery, Father Isaac Keeley sought to commission Ms. Foss to produce room-sized artwork that would be exhibited in the Brewery Exhibition space at a large fairground later that year, *i.e.*, Eastern's "The Big E" fairgrounds and exhibition space.

27. Father Isaac and the Brewery wanted to do more than just sell beer at Eastern's The Big E; they wanted to create an experience. They wanted theirs to the "Spencer Trappist Beer *Experience*." To that end, Father Isaac asked Cindy to create artwork that would transform the experience of drinking craft beer in a rather mundane exhibition hall into something that felt special using her talents and skills in graphic art.

28. Specifically, St. Joseph's Abbey had a private monastic dining room, the Abbey Refectory, that was not open to the public. Father Isaac suggested that, perhaps, Ms. Foss could by her artwork make an ordinary room feel like the Abbey Refectory.

29.  To do so, Ms. Foss had a complex and involved production process.

30.  The initial stages of artistic creation involved taking photographs:

   a.  _Initial look-and-feel photography_:  To give Father Isaac a sense of what the work might look like, Ms. Foss took a series of preliminary photographs of the St. Joseph's Abbey Refectory using her own photographic equipment.  Taking this initial series of photos, a standard initial step in creating graphic arts in her artistic practice, was to establish a look-and-feel impression that would give Father Isaac a sense of what she was envisioning and to ensure that he had no objection to it.  Ms. Foss took these photographs herself and arranged these initial photographs to request Father Isaac's opinion.

   b.  _Intermediate concept photography_:  Ms. Foss took a second round of photographs where she made very specific refinements to the positioning of her camera, the formats and modes of taking the photography, the lighting and other issues that might arise.  It might be helpful to think of these second set of photographs as a rough draft that established what the final concept of the work would be.

   c.  _High-resolution, production-quality photography_:  For her final set of photography, Ms. Foss retained a photographer with specialized photography equipment.  This photography equipment permitted her to take high-resolution photography of the St. Joseph's Abbey Refectory, to beautifully convey a real sense of the brick walls and the lighting of its interior spaces.  Ms. Foss gave precise directions to the sub-contracted photographer about how to position the camera, the modes to use, the quality of the image and the lighting (natural and otherwise), and how many photographs to take. Notably, these photographs were not the final product itself. This final set of photography was _not_ the end of the production process but rather raw materials for the next step of Ms. Foss' creation.

31.  Importantly, ordinary photographs don't have the sense of realism, _i.e._, of actually giving the viewer the sense of _being_ in the particular space depicted in the photograph.  Ms. Foss, however, wanted to use her artistic talents and skills to give the sense that the viewer was actually _in_ the St. Joseph's Abbey Refectory.

32. Thus, using graphic-arts software, Ms. Foss took the high-resolution photography as raw materials and began editing it into photo-realistic compilation prints. Ms. Foss imported the photographs into Adobe Photoshop, arranging them in layers, merging images together, adjusting the light and colors, all of which was a long, methodical, meticulous, carefully thought-out process. She would select which of the underlying final-cut photographs, edit them as she pleased to get to her desired look-and-feel, and then compile them all together to create a photo-realistic compilation and art print. Thus, the final product is not a single photograph, but a compilation of edited photographs that are then themselves edited into a single artistic print.

33. Ms. Foss' creative decisions did not stop there; she made a number of further creative decisions. First, she had to arrange the photo-realistic compilation prints into certain dimensions for printing. Second, she had to make decisions about the printing of the works because equipment used to print and the materials printed upon would affect the resulting works. To that end, Ms. Foss specially chose two separate printing companies to achieve the look-and-feel of the printed materials that would most accomplish her goals for the work, giving specific instructions as to the printing.

34. All her creative efforts culminated in beautiful photo-realistic artistic compilation prints that were printed out on wall segments, including a 122"x69" printed art on sintra, a 234"x69" printed art on sintra, three 47"x69" printed art on sintra, and one 112"x69" printed graphic on sintra—all together a series of photo-realistic photography-compilation prints that, when installed, gave the sense of being in the Abbey Refectory.

35. Then, Ms. Foss played some further roles in the installation and arrangement of the artwork into the exhibition space that Spencer Brewery and St. Joseph's Abbey would use to present the Spencer Trappist Beer Experience at Eastern's The Big E. When her prints were installed properly, the end result was to evoke in viewers the feeling that they were actually inside St. Joseph's Abbey Refectory enjoying a Trappist-distilled beer, just as a member of a monastic order might.

36. Ms. Foss made one final addition that is critical: she signed her work using the name of her sole proprietorship.

1    37. Below are some photographs that show her final product in the exhibition space, *i.e.*, show

2        her photo-realistic compilation prints being installed:





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

38. In turn, here are pictures she took once her work was installed.  The viewer should notice that it almost appears as if the photos are *of* the Abbey Refectory, but they're not.  They're photos of Ms. Foss' photo-realistic compilation prints after installation to give the look-and-feel as though the viewer is actually *in* the Abbey Refectory:



Complaint

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28





39. Last, but not least, Ms. Foss affixed her signature to her work, placing one of the following placards as a signature on the back of each print so as to not interfere with the photo-realism she had endeavored so hard to create:



Exhibit Panel Property of Spencer Brewery, LLC.
c/o St. Joseph's Abbey., Spencer, MA

Graphic Design © 2016 Hunter Foss Design, Worcester, MA

Photography © 2016 Ashley Homestead Photography, E. Freetown, MA

Large Format Printing by Elevation Exhibits & Events, Shrewsbury, MA

All U.S. and International copyrights reserved.

**PANEL #**

40. These photos, of course, are not the work itself. Rather, they depict how the result of many number of creative choices culminated in this Ms. Foss' work. Ms. Foss thinks the work would give a stronger impression in person but has tried to convey this impression through photography. Again, if the prints look shockingly like Refectory walls, it's because Ms. Foss created them to look that way through numerous artistic judgments.

**C. Ms. Foss is the owner of this work and has registered her copyright with the U.S. Copyright Office.**

41. The amount of work Ms. Foss put into this work, and on a tight timeframe, was substantial. Ms. Foss had to manage the project, design the artwork, procure the equipment, select the production techniques, coordinate the printing, and arrange the assembly and delivery of room-sized prints. And the outlays beyond Ms. Foss's time—photography equipment, subcontractors, purchasing of materials, printing of extremely high-quality prints that are astonishing—were expensive.

42. Father Isaac wanted Ms. Foss to do all this on the cheap.  When Ms. Foss quoted Father Isaac that market rates for all of the work he was proposing would be around $20,000, Father Isaac asked Ms. Foss repeatedly for significantly below-market rates.  And, Ms. Foss did her best to accommodate those requests.

43. Her first offer was to provide unbundled services.  For example, for the first photography shoot and presentation of look-and-feel photography, Ms. Foss asked for a mere $450 (including a trip to the Abbey Refectory itself which is far from Ms. Foss' home in Worcester).

44. Then, she completed the rest of the work for approximately $6400.  She had to pay for the printing.  Printing alone cost Ms. Foss at least $1900.  There were a number of other costs involved as well.

45. Both because of these low prices and because she was making art, Ms. Foss was clear in her oral representations to Father Isaac that St. Joseph's Abbey and Spencer Brewery would own the physical artwork, but she would retain all of her intellectual-property rights except that they would be allowed to publicly display the one physical copy of the work in-person at the Big E exhibition.

46. Indeed, Ms. Foss did her best to accommodate Father Isaac, Spencer Brewery, and St. Joseph's Abbey.  Their deal was that Father Isaac, Spencer Brewery, and St. Joseph's Abbey would _only_ use Ms. Foss' print to display the physical work that they owned but would otherwise have no rights in the intellectual property.

47. Yet Ms. Foss was also quite clear with Father Isaac that she had been burned in the past by clients who had not only failed to respect her rights as an artist, but also outright disrespected them.  That's why Ms. Foss informed Father Isaac that Spencer Brewery would own the physical artwork that she created, but that she would retain all copyrights in the artwork, with the one exception listed immediately below.

48. The only license Father Isaac and Spencer Brewery requested, and the only authorization they received, was to publicly display the completed physical artwork, most prominently at the Spencer Trappist Beer Experience—the planned exhibition space at Eastern's The Big E. No further exhibition of her artworks, without her permission, was permitted.

49. Thus, Ms. Foss remains the copyright owner of the works at issue because she made them and she has not transferred the rights at issue here.  Specifically, she retains the right to reproduce the work, to make derivatives of it, to publicly distribute copies of it, and to publicly display it (except she has no right to publicly display a physical reproduction of it).

50. Ms. Foss has registered her copyrighted work with the U.S. Copyright Office.  It was registered as Visual Art with the registration number: **VAu 1-323-259**.  A screenshot of the registration as listed on the Copyright Office's website and located from a search of its records is as follows:



51. Two aspects of the registration are noteworthy:

    a.  The registration states the following about why it's registrable: "Basis for Registration: Unpublished collection." Publication is a term of art in the Copyright Act that refers to specific usages. See 17 U.S.C. § 101 (defining "Publication"). Ms. Foss' copyrighted work has not been published because she has neither distributed copies of it to the public nor offered to distribute copies of it. So, although we might colloquially say it is published, it is not published in the sense that Congress uses that word in the Copyright Act.

    b.  The registration also notes that it is based on "Pre-existing Material: photograph." These pre-existing materials are the photographs that were taken directly of the St. Joseph's Abbey Refectory. Ms. Foss' final work, however, as discussed above is a photo-realistic compilation print of them. Thus, the individual photographs aren't included in the registration. Rather, they are the underlying materials that Ms. Foss used to synthesize them into a photo-realistic print.

**D.  Without Ms. Foss' authorization, Eastern created marketing videos prominently featuring Ms. Foss' works and then widely disseminated these videos online.**

52. Enter Eastern. For the commercial and business purpose of generating revenues and marketing the attractions at its fairgrounds, Eastern and its agents, particularly those who film and produce its advertising program, CoffeE with JuliE, decided to make a number of copies.

53. Then, Eastern posted these numerous videos to its own Facebook and subsequently to YouTube, with a livestream video depicting Ms. Foss' work. These videos used Ms. Foss's print in the background, then fully featured her print at length, talked about the print unambiguously, and used it as beginning and ending plot points—for more than eight minutes. To add insult to injury, Father Isaac misleadingly suggested that he had created the artwork—taking credit away from Ms. Foss. Neither Eastern nor any of its agents gave Ms. Foss any attribution, any public credit, any discussion, or any acknowledgement that Ms. Foss was the author.

54. The purpose of Eastern's livestream video was to promote Eastern's "The Big E" fair, and the Spencer Brewery Trappist Experience, an attraction at "The Big E." In the video, Eastern's agent, Julie Harrison, the host of CoffeE with JuliE, said, "For $10, you can come here to the Spencer Trappist Beer Experience." She also said, "The Spencer Trappist Beer, you can try it right here at The Big E, it's only $10 for the beer, the glass, the experience." Ms. Harrison also said that the $10 price was really a bargain. Near the end of the video, Ms. Harrison also told viewers "Share the post!"

**E.    On information and belief, Eastern has continued to infringe Ms. Foss' copyrights.**

1. On or around March 1, 2017, Ms. Foss notified Eastern that it had infringed her copyright by publishing the video. Eastern took the video down upon Ms. Foss's notice, but shortly republished it on Facebook after responding to Ms. Foss that it believed the video was fair use.

2. The implications of this theory are that Eastern's counsel believed that Eastern can do largely the same acts did before as much as it wants without Ms. Foss' permission. In other words, this assertion was tantamount to Eastern's statement that it believed that it could make any use of her work in these kinds of videos without attribution, without payment, and without limit on the number of copies so long as they were uses of this type.

3. Later, appellate counsel for Ms. Foss, Mr. Andrew Grimm, reached out to Eastern's counsel to inquire about a final resolution of the dispute between the parties and to settle, finally, the legal disputes between their respective clients.

4. In response, Eastern's counsel became extremely aggressive and refused to engage case law or to discuss the matter on the phone while a number of emails were traded. Then, Eastern gave a non-serious discussion of the case law and then refused to speak any further, despite attempts by Ms. Foss' appellate counsel.

5. Among other requests, Ms. Foss' appellate counsel asked for assurances that Eastern has stopped infringing the work and has ceased all infringing usages of it. Eastern's counsel refused to respond. Despite a follow-up, Eastern's counsel again refused to give any kind of assurance that the infringement had ceased.

6. Specifically, Ms. Foss' appellate counsel, Andrew Grimm, had written the following to Eastern's counsel: "Fifth, you also overlook that I have no assurances from you regarding the many videos that were made infringing upon Ms. Foss' work. She repeatedly asked that you stop and give her attribution and you did not. Given this pattern and practice of behavior, it seems imminently reasonable that your client has continued to use the infringing videos and infringing public performances in other manners. So, even if you were correct that res judicata applied as to past infringement actions, there would still be grounds for a lawsuit insofar as you have refused to fully cooperate with Ms. Foss' reasonable requests through us to know what your client has been doing with her intellectual property. Thus, we will need to know what is the status of the videos, images, pictures, etc. that you client has or has not been making of the work at issue. In addition, it's quite possible given your client's disregard of Ms. Foss' intellectual property rights (casual, intentional, or willful, I am not sure) that there is much more to discovery through court-ordered discovery. Your reticence to engage or do the types of good faith conversation with me and my co-counsel regarding this matter indicates that perhaps the only way to settle these disputes are through discovery. And, of course, I do hope that you have advised your client that discoverable material is not to be destroyed and, instead, must be preserved. I do need your assurances on that while we are continuing this conversation."

7. Eastern is in sole control of the facts of whether it has continued to infringe and whether it has used those videos internally and/or externally beyond what Ms. Foss knows. Mr. Grimm appraised Eastern's counsel of this point as well: "Sixth, it is especially imperative that you provide us the requested information because your client is the only custodian of this information. There are really only two options: proceed to court or get a full and fair accounting of all the uses of Ms. Foss' works from. We would much prefer to keep this out of court if possible and find some resolution that makes our client happy, but there's been a serious breakdown of trust between your client and Ms. Foss after your client repeatedly and continually refused to treat her and her life's work with respect."

8.  On information and belief, Eastern's counsel has decided to be silent and to insist that such marketing video uses are fair uses.  This theory could indicate that Eastern believes that it can make unauthorized reproductions, derivatives, and public displays of Ms. Foss' works with impunity.  And the failure to give simple assurances about the works is indicative of the plausible conclusion that Eastern has continued to make uses internally of Ms. Foss' works without authorization.

9.  On information and belief, Eastern has continued to make unauthorized copies that give Ms. Foss no credit.

10. Because all the specifics of further infringement are within Eastern's control and purview and access, their refusal to be forthcoming on the issue strongly indicates the plausibility of ongoing infringement.  It would be pretty easy for Eastern's counsel to confirm when it's unauthorized uses of Ms. Foss' work has entirely ceased.

11. Specifically, on information and belief, Eastern has made infringing uses internally that Ms. Foss could not know of without discovery.  See Arthur Miller, Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure, 88 N.Y.U.L. Rev. 286, 340 (2013) ("[I]t is futile and a bit absurd to tell someone to plead what he or she does not know and cannot access.").

## F.  When Ms. Foss asserted her rights to claim authorship of her works, Eastern refused to respect that right.

12. In addition, Ms. Foss' work is a series of signed photo-realistic compilation prints.  It's a work of visual art protected by the Visual Artists Rights Act of 1990.

13. Eastern's videos prominently feature Ms. Foss' work; prominently discuss it; and are potentially misleading about who authored the work by suggesting Father Isaac created the work.  Indeed, on information and belief, Ms. Foss gets no mention in the video, not even the credits.

14. Ms. Foss, through appellate counsel, Mr. Andrew Grimm, has asserted Ms. Foss' right of attribution to Eastern's counsel via email.

15. In doing so, Ms. Foss was claiming authorship of the work of visual art and requiring that her right to do so be respected, as she is entitled to affirmatively claim authorship under the statute.

16. Specifically, Mr. Grimm wrote the following to Eastern's counsel in an email: "Seventh, there is a very real problem that your client repeatedly refused to give Ms. Foss any credit for her work, any attribution.  Therefore, we must insist that your client give Ms. Foss attribution in the videos as author of the depicted work of visual art and wherever they have decided to [exploit] her work.  Your client didn't do it years ago and is still refusing to do so.  Ms. Foss, through us, hereby reasserts her rights that you edit the videos to include a fair attribution to her as author of the depicted work and that you take some manner of action to give her credit for her work wherever else it's been depicted.  It's fundamentally unfair to not do so, especially when Ms. Foss has repeatedly insisted that you do.  Thus, we again request that you provide Ms. Foss with attribution on the works themselves and on all works so depicting her work that are in your custody."

17. Eastern's counsel made no response.

18. Mr. Grimm followed up and asked if Eastern's counsel would respond.  Mr. Grimm's follow up was met with radio silence.

### V. CAUSES OF ACTION
### Violations of the U.S. Copyright Act
**Plaintiff's Exclusive Rights to Reproduce, Prepare Derivatives of,
Publicly Distribute, and Publicly Display her Copyrighted Works
[17 U.S.C. § 106(1)-(3), (5)]**

**Claims 1-2: Eastern's Direct and/or Indirect Infringement of Ms. Foss' Exclusive Rights of Reproduction, Derivation, Distribution, and Display.**

19. Ms. Foss hereby repeats and realleges paragraphs alleged above.

20. "To establish infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991).

21. Ms. Foss owns a valid copyright in her photo-realistic compilation prints.

    a. Ms. Foss personally authored the final product of the artwork.

    b. Ms. Foss' artwork is original to her.

    c. Ms. Foss' artwork easily meets the "extremely low" bar of creativity necessary to be copyrightable subject matter.  See Feist, 499 U.S. at 345.

    d. Ms. Foss' prints are not works made for hire.  See 17 U.S.C. § 101.

    e. Ms. Foss has registered her copyrights in the prints.

22. Despite Ms. Foss' statutory "exclusive rights to do or authorize" the copying of the prints via reproduction, derivation, public distribution, and/or public display, Eastern did and authorized such acts without Ms. Foss' consent.  On information and belief:

    a. Eastern, through its agents, reproduced the prints in copies or authorized it to be reproduced in copies.  See 17 U.S.C. § 106(1).

    b. Eastern, through its agents, prepared a derivative work based upon the prints or authorized such a derivative to be prepared.  See 17 U.S.C. § 106(2).

    c. Eastern, through its agents, distributed copies of the prints publicly or authorized the prints to be publicly distributed.  See 17 U.S.C. § 106(3).

    d. Eastern, through its agents, displayed the prints publicly or authorized the prints to be displayed publicly.  See 17 U.S.C. § 106(5).

23. **Claim 1:** Eastern, through its agents, either directly and/or indirectly infringed Ms. Foss' copyrights in the photo-realistic compilation prints.

**<u>Violations of the U.S. Visual Artists Rights Act</u>**
**Refusal to Abide by Artist's Affirmative Assertions of the**
**Right to Claim Authorship of a Work of Visual Art**
**[17 U.S.C. § 106A(a)(1)(A)]**

**Claim 2: Eastern's Refusal to Accommodate or Abide by Ms. Foss' Affirmative Assertion of her Moral Rights to Claim Authorship of her Works of Visual Art.**

24. Ms. Foss hereby repeats and realleges paragraphs alleged above.

25. Section 106A(a)(1)(A) of the Copyright Act gives Ms. Foss the right to claim authorship of a work of visual art she has created.

26. Ms. Foss' work is a work of visual art.

27. Ms. Foss must affirmatively assert this right.  She has, through her appellate counsel.

28. Eastern has refused to respond to her affirmative assertion of her right.

29. Refusal to provide attribution to Ms. Foss as author of the works of visual art in some reasonable way in videos that depict her original work of visual art violate and infringe Ms. Foss' rights under 17 U.S.C. § 106A(a)(1)(A) and 17 U.S.C. § 501.

30. **Claim 2:** Eastern has infringed Ms. Foss' moral right to claim attribution of her work of visual art by refusing to respect that right.


## VI. PRAYER FOR RELIEF

WHEREFORE, Ms. Foss prays for judgment in her favor and against Eastern for any and all relief that is permitted, up to and potentially including:

31. **Declaratory Relief**: That the Court, if permitted,

    a. Declare whether Ms. Foss is the legal author and legal owner of the copyright in the work.

    b. Declare whether Ms. Foss' work is a work of visual art.

    c. Declare whether Eastern has infringed Ms. Foss' copyrights.

    d. Declare whether Eastern has infringed Ms. Foss' moral rights of attribution.

32. **Money Damages, Costs, and Fees**: That the Court, if permitted,

    a. Award Ms. Foss money damages, either actual damages and infringer's profits, see 17 U.S.C. § 504(b), or statutory damages, see 17 U.S.C. § 504(c), in an amount to be determined at trial against Eastern.[1]

    b. Award Ms. Foss a reasonable attorney's fee.  See 17 U.S.C. § 505.

    c. Award Ms. Foss full recovery of costs.  See 17 U.S.C. § 505.

33. **Injunctive Relief**: That the Court, if permitted and where necessary to provide a remedy where money damages cannot adequately and sufficiently compensate Ms. Foss:

---

[1] Ms. Foss hereby reserves making her election between the actual damages or statutory damages until after a verdict is rendered at trial.

     a.   Grant a preliminary and a permanent injunction preventing and restraining Eastern's infringement.  <u>See</u> 17 U.S.C. § 502(a).

     b.   Order the impoundment of Eastern's infringing articles, the means of their production, and the records of Eastern's infringement.  <u>See</u> 17 U.S.C. § 503(a)(1)(A)-(C).

34.  **Other Relief**: That the Court, if permitted,

     a.   Grant any other relief permitted by law.

## VII. DEMAND FOR TRIAL BY JURY

35.  Ms. Foss hereby demands a trial by jury of all issues so triable.  <u>See</u> Fed. R. Civ. P. 38(b).

DATED: December 4, 2020         Respectfully submitted,

*/s/ Stephen J. Gordon*
Stephen J. Gordon (BBO No. 203620)
STEPHEN GORDON & ASSOCIATES
2 Foster Street, 2nd Floor
Worcester, Massachusetts 01608
(508) 755-1050
stevecolvi@aol.com

Andrew Grimm (*pro hac vice* forthcoming)
DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive
Omaha, Nebraska 68154
(531) 210-2381
andrew@digitaljusticefoundation.org

*Attorneys for Plaintiffs*

Complaint